IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN RE: PATSY SIMMONS, DEBTOR                              CHAPTER 7

BOKF, NA                                                  PLAINTIFF

     v.     Civil No. 12-5105

PATSY SIMMONS                                             DEFENDANT

### MEMORANDUM OPINION

Now on this 28th day of December, 2012, the captioned bankruptcy appeal comes on for consideration, and from the briefs of the parties, the transcript of the evidentiary hearing, and the documents of record, the Court finds and orders as follows:

1.  In the Chapter 7 proceedings of debtor Patsy Simmons, one of her creditors, BOKF, NA d/b/a Bank of Arkansas ("BOKF"), filed a Complaint To Determine Dischargeability Of Debt (the "Complaint").  BOKF alleged that its predecessor in interest, Bank of Arkansas, made several loans totaling over $8,000,000 to Simmons Limited Partnership ("Simmons LP") that were guaranteed by Ms. Simmons.  The Complaint further alleged that Ms. Simmons had given materially false financial statements and tax returns in support of the loans, and transferred property to others with intent to defraud creditors.

The Complaint alleged that neither Simmons LP nor Ms. Simmons paid the loans in question, and further alleged that:

    (a)   Ms. Simmons' debt to BOKF was not dischargeable pursuant to **11 U.S.C. § 523(a)(2)(B),** and

    (b)   Ms. Simmons was not entitled to a discharge pursuant to **11 U.S.C. §§ 727(a)(2), (3),** or **(5).**

    2.   Following an evidentiary hearing, the Bankruptcy Court found that BOKF had abandoned its claims under **§ 523(a)(2)(B)** and **§ 727(a)(2),** and denied the objections to discharge asserted under **§§ 727(a)(3), (a)(4)**[1], and **(a)(5).**

    3.   BOKF appealed the Bankruptcy Court's decision, and elected -- pursuant to **28 U.S.C. § 158(c)(1)(A)** and **Fed.R.Bankr.P. 8001(c)** -- to have the appeal heard by this Court. The matter is fully briefed, and ripe for decision.

    4.   On appeal, this Court reviews the Bankruptcy Court's findings of fact for clear error, and its conclusions of law *de novo*. **DeBold v. Case, 452 F.3d 756, 761 (8th Cir. 2006).** A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." **U.S. v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).**

    The denial of discharge provisions in **§ 727** are strictly construed in favor of debtors, as they impose harsh and drastic

---

[1] This claim was asserted in BOKF's post-trial brief, and the Bankruptcy Court elected to resolve it.

sanctions, but the section is also intended to "prevent the debtor's abuse of the Bankruptcy Code." **In re Korte, 262 B.R. 464, 471 (8th Cir. BAP 2001).** The burden of proof is on the party objecting to discharge. *Id.*

5. The facts found by the Bankruptcy Court may be briefly summarized as follows:

(a) Ms. Simmons had an on again/off again marriage to Charles Simmons, who remained her business partner even during times when they were divorced.

(b) Ms. Simmons operated multiple corporate entities, two of which -- Simmons LP and Walter White, LLC ("White LLC") -- figure in the events of this case.

(c) At some point before her bankruptcy, Ms. Simmons (or Simmons LP or White LLC) owned the following businesses or properties:

* Ride Rite, Inc. ("Ride Rite"), a used car dealership with locations in Rogers and Springdale;

* the real property underlying and adjacent to Ride Rite; and

* sixteen parcels of real property set out in a prenuptial agreement between Ms. Simmons and Mr. Simmons dated August 11, 2008.

(d) Ms. Simmons transferred control of Ride Rite to her son Walter White in the early 1990's, but retained title to all stock

and all tax liabilities and benefits, pursuant to a handwritten "Business Agreement" dated January 1, 1997. The Business Agreement provided that the stock would transfer to Mr. White ten years from the date of the Business Agreement.

(e) In 1997 or 1998, Ms. Simmons transferred the real property on which Ride Rite was situated to White LLC.

(f) On January 1, 2008, Ms. Simmons transferred additional real property to White LLC. She then "stepped down" from White LLC, leaving Mr. White as its owner, and executed a document entitled Minutes of the Directors and Shareholders Meeting of Ride-Rite, Inc., transferring the Ride Rite stock to Mr. White.

(g) On August 11, 2008, in view of their upcoming remarriage, Ms. Simmons and Mr. Simmons entered into a handwritten Prenuptial Agreement which allocated nine real properties owned by Simmons LP to Mr. Simmons in the event of Ms. Simmons's death or the parties' divorce. This document allocated seven real properties to be retained by Ms. Simmons in the event of divorce, or by her estate upon her death.

(h) On February 22, 2010, Ms. Simmons and Mr. Simmons were divorced, and Mr. Simmons received, by way of settlement, the same property allocated to him in the Prenuptial Agreement.

(i) On July 19, 2010, Ms. Simmons filed her Chapter 7 bankruptcy petition.

6. On the basis of the evidence presented, the Bankruptcy

Court reached the following conclusions:

* BOKF failed to meet its burden of showing that Ms. Simmons' record-keeping was "so deficient as to make it impossible to determine her financial condition and business transactions," as required for its **§ 727(a)(3)** claim.

* BOKF failed to show that Ms. Simmons made a false statement in connection with her bankruptcy, as required for its **§ 727(a)(4)** claim.

* Ms. Simmons satisfactorily explained the diminution of assets that she experienced before filing her bankruptcy petition, so as to withstand BOKF's **§ 727(a)(5)** claim.

BOKF alleges that each of these findings was error, and that the Bankruptcy Court erred when it failed to find that Ms. Simmons' personal guaranty to BOKF was non-dischargeable under **§§ 727(a)(3), (a)(4),** and **(a)(5)**.

7. **Section 727(a)(3)** provides that the bankruptcy court "shall grant the debtor a discharge" unless

> the debtor has . . . failed to keep . . . any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. . . .

BOKF had the initial burden of proving that Ms. Simmons had inadequate records from which her financial condition could be ascertained. Upon such proof, the burden would shift to Ms.

Simmons to justify her recordkeeping, but BOKF would retain the ultimate burden of proof on this claim. **In re Swanson, 476 B.R. 236, 240 (8th Cir. BAP (Minn.)) 2012).** These are factual issues reviewed for clear error. **In re Sendecky, 283 B.R. 760, 764 (8th Cir. BAP (Minn.) 2002).**

The Bankruptcy Court found that BOKF failed to prove Ms. Simmons had inadequate records. It stated that "[w]hen considered together, various documents over a span of 11 years show that it was [Ms. Simmons'] long-time intention to fully transfer the Ride Rite business and the Ride Rite real properties to her son Mr. White. . . . In the same way, the prenuptial agreement between [Ms. Simmons] and Mr. Simmons [], dated August 11, 2008, clearly allocated assets in the event of their divorce, which subsequently occurred in 2010."

8. BOKF contends that Ms. Simmons' financial records were nothing more than a "shoebox accounting system" which commingled her assets with those of Simmons LP and Mr. Simmons, conveniently allowing her to claim ownership when it was in her best interest, and to disclaim ownership when it was not. BOKF points out that the only documentation of the transfers to Mr. White and Mr. Simmons were handwritten notes that surfaced after the bankruptcy proceedings began, that the assets were transferred to close family members, and that the transfers were inconsistent with other evidence, such as:

\*   the 2008 federal income tax returns of Ms. Simmons, Ride Rite, and White LLC, showing that Ms. Simmons was 100% shareholder of Ride Rite and owned 99.8088% of White LLC in 2008;

\*   the 2008 Arkansas State Police Used Motor Vehicle Dealers Application for Ride Rite (Springdale location) showing that Ms. Simmons had an interest in the corporation;

\*   the 2009 Arkansas State Police Used Motor Vehicle Dealers Application for Ride Rite (Rogers location) showing that Ms. Simmons had an interest in the corporation;

\*   a Loan Offering Memorandum prepared by Simmons First Bank on January 5, 2009, in connection with Ms. Simmons' request to renew a loan there, stating that the majority of Ms. Simmons's cash flow comes from Ride Rite, which "is managed by Mr. Walter White, her son," and which she "has agreed to sell . . . to her son, Mr. White, sometime in the next 24 months.  As with other children she'll be 'gifting' a portion of the business to him, as she has agreed to a sales price of $600k."

\*   A Term Loan Agreement for Simmons First Bank signed by Ms. Simmons on 03/04/09 which included a "negative pledge" that she would not sell or transfer Ride Rite until certain contingencies were met.

\*   A 12/04/09 e-mail from David Bartlett of Simmons First Bank, recapping a 12/03/09 meeting with Ms. Simmons, which noted that Ms. Simmons was filing for divorce and had said in the

meeting that "there was no prenuptial agreement."

9. The Court is not persuaded that the Bankruptcy Court erred in finding that Ms. Simmons kept sufficient records to satisfy § 727(a)(3). The fact that documents are handwritten does not invalidate them, and it is not particularly surprising that transactions between family members were not revealed to outsiders.

Moreover, Ms. Simmons offered explanations for the discrepancies in the various documents, and the Bankruptcy Court accepted those explanations. For example, Ms. Simmons testified that she transferred Ride Rite to Mr. White on January 1, 2008, pursuant to the Business Agreement, but listed income from Ride Rite on her 2008 federal income tax return to true up a reporting error on previous years' returns. She testified that after transferring Ride Rite to Mr. White, she signed -- before reading it -- a document for Simmons First Bank agreeing not to transfer Ride Rite until certain contingencies occurred. She testified that she then read the document, and said the provision would have to be stricken, and that the bank agreed to substitute a corrected page, but failed to do so.

The Bankruptcy Court found Ms. Simmons' explanations for the inconsistencies satisfactory. While the discrepancies pointed out by BOKF do raise questions in the Court's mind, it cannot say that it is left with "the definite and firm conviction that a mistake

has been committed" by the Bankruptcy Court in accepting Ms. Simmons' explanations. Thus, BOKF has not met its substantial burden of demonstrating clear error on the part of the Bankruptcy Court in connection with the **§ 727(a)(3)** issue.

10. **Section 727(a)(4)** provides that the bankruptcy court "shall grant the debtor a discharge" unless "the debtor knowingly and fraudulently, in or in connection with the case -- (A) made a false oath or account . . . ."

For a false statement to bar discharge, it must be both material, and made with intent. These concepts are fleshed out in **In re Korte**, *supra*:

> The subject matter of a false oath is material and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property. The question of a debtor's knowledge and intent under § 727(a)(4) is a matter of fact. Intent can be established by circumstantial evidence, and statements made with reckless indifference to the truth are regarded as intentionally false.

**262 B.R. at 474** (internal quotation marks and citations omitted).

11. To establish its claim under **§ 727(a)(4)(A)**, BOKF needed to prove five things:

* that Ms. Simmons made a statement under oath;
* that the statement was false;
* that she made the statement with fraudulent intent;
* that she knew the statement was false; and

-9-

\*      that the statement related materially to her bankruptcy. **In re Richmond**, 429 B.R. 263, 307 (Bkrtcy. E.D. Ark., 2010).

The Bankruptcy Court found that BOKF failed to prove the first two of these elements, making consideration of the remainder unnecessary. It reasoned that the property transfers to Mr. Simmons and Mr. White were made outside the time periods within which such transfers would have been required to be listed on Ms. Simmons's bankruptcy schedules. Thus, her failure to list them did not amount to a false statement.

The Bankruptcy Court further found that, to the extent other documents indicated Ms. Simmons actually retained ownership of the properties, she offered reasonable explanations for these discrepancies.

12. BOKF's contention that this was error is based on the theme underlying all its arguments, i.e., that the asset transfers to Mr. Simmons and Mr. White were a sham. BOKF reasons, in connection with its **§ 727(a)(4)** argument, that Ms. Simmons actually retained the assets, thus making her bankruptcy schedules false for failing to include them.

BOKF argues that "the Bankruptcy Court recognizes that Mrs. Simmons 'actually retained some ownership in Ride Rite and Walter White [LLC] as late as 2009' but concludes that Mrs. Simmons 'reasonable explanations' somehow remove these owned assets from disclosure." BOKF goes on to state that the Bankruptcy Court

"reluctantly conceded" that Ms. Simmons "clearly retained control of Ride Rite, Inc. and Walter White, LLC during 2009 (and may still)."

BOKF misquotes the Bankruptcy Court's Order. What the Order actually says is "*BOKF alleges* that [various documents] show that Ms. Simmons actually retained some ownership interest in the Ride Rite business and Walter White, LLC as late as 2009." (Emphasis added.) The Order then immediately rejects BOKF's allegation, stating that Ms. Simmons "offered reasonable explanations for these discrepancies, and the Court is satisfied that the properties were transferred in January 2008."

BOKF has mistaken the Bankruptcy Court's description of BOKF's trial position as the Bankruptcy's Court's finding of fact. It has not demonstrated any error in the Bankruptcy Court's decision on the **§ 727(a)(4)** issue.

13. **Section 727(a)(5)** provides that the bankruptcy court "shall grant the debtor a discharge" unless

> the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities. . . .

As with the **§ 727(a)(3)** claim, BOKF had the initial burden of proving that Ms. Simmons failed to satisfactorily explain a diminution in her assets. **In re Swanson**, *supra*, 476 B.R. at 241. The Bankruptcy court found that BOKF met this initial burden.

The burden then shifted to Ms. Simmons to offer a satisfactory explanation. **In re De Ronde**, **2012 WL 5246916 (Bkrtcy. S.D. Iowa, 2012).** Ms. Simmons offered various explanations:

\*   that she had planned the transfers to Mr. White for a long time;

\*   that the prenuptial agreement with Mr. Simmons was reasonable in light of their relationship history;

\*   that her financial statements were submitted in her name jointly with either Mr. Simmons, Simmons LP, or both, and thus did not provide an accurate portrait of her individual assets; and

\*   that the financial statements do not account for the general decline in property values resulting from the real estate crisis that started in 2008.

The Bankruptcy Court found these explanations satisfactory.

14.  BOKF contends that this was error, based largely on its position that the transfers were sham; that Ms. Simmons failed to account for the amount of her contribution toward acquisition of assets Mr. White received under the Prenuptial Agreement; and that the transfers to Mr. White took place when Ms. Simmons was in default on the BOKF loans and other loans.

"The determination of whether a debtor's explanation is satisfactory rests within the discretion of the court." **In re Kouangvan**, **2012 WL 2931182 (Bkrtcy. S.D. Iowa, 2012).** In the

absence of an abuse of this discretion, there is no basis to reverse the trial court, and BOKF has shown no such abuse.  The Bankruptcy Court believed Ms. Simmons when she testified that she made the transfers to Mr. White and Mr. Simmons, and that they were legitimate, and there was an evidentiary basis for that belief.  The assets in the Simmons' divorce were divided according to their Prenuptial Agreement, and BOKF cites no legal precept requiring a prenuptial agreement to allocate property to the person who paid for it in the first place.

15.  Because BOKF has failed to establish any error in the Bankruptcy Court's findings relative to **§§ 727(a)(3), (a)(4),** and **(a)(5),** it has also failed to establish that the Bankruptcy Court erred in finding that Ms. Simmons's personal guaranty to BOKF was non-dischargeable.  The decision of the Bankruptcy Court is, therefore, affirmed.

**IT IS SO ORDERED.**

   **/s/ Jimm Larry Hendren**
   **JIMM LARRY HENDREN**
   **UNITED STATES DISTRICT JUDGE**